MICHAEL L. LARSEN (4069)
NICOLE G. FARRELL (10130)
JEFFREY M. SANCHEZ (13858)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Post Office Box 45898
Salt Lake City, UT  84145-0898
Telephone: (801) 532-1234
Facsimile: (801) 536-6111

*Attorneys for Overstock.com*

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UATH

| | |
|---|---|
| OVERSTOCK.COM, INC., a Delaware corporation,<br><br>       Plaintiff,<br><br>vs.<br><br>ZBIDDY.COM, a Delaware corporation; DOES 1-10 inclusive;<br><br>       Defendants. | Case No.  2:13-cv-00224-RJS<br><br>**COMPLAINT**<br><br>Judge Robert J. Shelby<br><br>**(Jury Demanded)** |

Plaintiff Overstock.com, Inc. ("Overstock"), by and through its undersigned counsel, files this Complaint for trademark infringement and unfair competition, and seeks a preliminary injunction, a permanent injunction, and damages against Defendants ZBiddy.com  ("ZBiddy") and Does 1-10 (collectively, "Defendants"), and alleges as follows:

## NATURE OF THE CASE

1. This is a civil action under the Trademark Laws of the United States, 15 U.S.C. § 1051 *et seq.*, for trademark infringement pursuant to section 43(a) and section 32, and of the Trademark Act of 1946 (the Lanham Act), as amended, 15 U.S.C. sections 1125(c) and 1114.

## PARTIES

2. Overstock is a Delaware corporation with corporate offices located at 6322 South 3000 East, Suite 100, Salt Lake City, Utah, 84121.

3. Upon information and belief, ZBiddy is a Delaware corporation with its offices at 427 N. Tattnall Street, # 67128, Wilmington, Delaware, 19801.

4. Upon information and belief, Does 1-10 are currently or have been in the past agents of ZBiddy, had agreements of agency with ZBiddy, or acted within the course and scope of an agency relationship with ZBiddy.  Upon information and belief, Does 1-10 are individuals and/or companies that provide marketing and promotional services to ZBiddy.

## JURISDICTION AND VENUE

5. This action arises under the trademark laws of the United States, 15 U.S.C. section 1051 *et seq.*  The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.

6. This Court has personal jurisdiction over Defendants because Defendants are transacting business in the State of Utah and are committing infringement in this state.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

### Overstock.com's Trademarks and Business

8.     Overstock is the owner of the following registrations ("the OVERSTOCK Marks") issued by the United States Patent and Trademark Office, as well as all of the business and goodwill represented thereby:

| Mark | Reg. No. | Registration Date | Goods and Services |
|---|---|---|---|
| OVERSTOCK.COM | 2,939,764 | April 12, 2005 | Online wholesale and retail store services featuring general consumer merchandise, namely, clothing, shoes, bath and body products, jewelry, electronics, cookware, housewares, appliances, furniture, linens, pillows, decorative accessories, office furniture and accessories, toys, games, sporting goods, tools, outdoor lawn and garden equipment, pet supplies and paper products, in class 35 (U.S. CLS. 100, 101 and 102). |
| OVERSTOCK.COM | 2,503,246 | October 30, 2001 | Online wholesale and retail store services featuring general merchandise, in class 35 (U.S. CLS. 100, 101 and 102). |
| OVERSTOCK.COM YOUR ONLINE OUTLET | 3,069,011 | March 14, 2006 | Online wholesale and retail discount store services in the field of general consumer merchandise, in class 35 (U.S. CLS. 100, 101 and 102). |
| OVERSTOCK.COM PRICE | 3,693,465 | October 6, 2009 | Online wholesale and retail discount store services in the field of general consumer merchandise, in class 35 (U.S. CLS. 100, 101 and 102). |
| OVERSTOCK.COM | 3,693,464 | October 6, 2009 | Online wholesale and retail discount store services in the field of general |

| PRICES | | | consumer merchandise, in class 35 (U.S. CLS. 100, 101 and 102). |
|---|---|---|---|
| OVERSTOCK.COM IT'S ALL ABOUT THE PRICE | 3,693,463 | October 6, 2009 | Online wholesale and retail discount store services in the field of general consumer merchandise, in class 35 (U.S. CLS 100, 101 and 102). |
| OVERSTOCK.COM IT'S ALL ABOUT THE PRICES | 3,693,462 | October 6, 2009 | Online wholesale and retail discount store services in the field of general consumer merchandise, in class 35 (U.S. CLS. 100, 101 and 102). |
| LIVE BETTER WITH OVERSTOCK.COM | 3,728,854 | December 22, 2009 | Online wholesale and retail store services featuring general consumer merchandise, in class 35 (U.S. CLS. 100, 101 and 102). |
| OVERSTOCK.COM CARS | 3,676,884 | September 1, 2009 | Providing information about vehicles for sale via a global communications network, namely, providing information about vehicles for sale, vehicle specifications, vehicle selection, vehicle availability vehicle pricing, vehicle comparisons, and providing photographs of vehicles; advertising services, including providing advertising for the sale, lease and financing of vehicles including the advertising of vehicle prices and features via a global computer network; providing computerized online ordering services for others featuring vehicles and transportation-related goods and services including vehicle parts, vehicle accessories, and repair services, class 35 (U.S. CLS 100, 101 and 102). |

True and correct copies of the above cited Registrations are attached hereto as **Exhibit A**.

9. Since as early as 1999, Overstock has been using the OVERSTOCK Marks in commerce in the United States and in many foreign countries.

10. The OVERSTOCK Marks are valid and subsisting, unrevoked, and uncancelled. The registrations for OVERSTOCK.COM (U.S. Reg. No. 2,939,764) and OVERSTOCK.COM YOUR ONLINE OUTLET (U.S. Reg. No. 3,069,011) are incontestable under 15 U.S.C. §§ 1065 and 1115.

11. Overstock has widely and extensively advertised, promoted, and sold its services under the OVERSTOCK Marks through various means, including but not limited to, Internet-based advertising, the Overstock.com website, television, radio, and print media.

12. Overstock has invested tens of millions of dollars into its promotion of the OVERSTOCK Marks and is one of the most prominent and well-known, Internet-based, e-commerce brands in the United States.

13. Overstock's annual sales have increased every year since 1999. Revenue in 1999 was approximately $1.8 million. Revenue in 2012 was nearly $1.1 billion.

14. Overstock is a publicly traded company listed on the NASDAQ Global Market System.

15. Overstock.com presently offers more than one million products. Overstock employs nearly 1,300 people.

16. The consuming public and the trade have come to recognize the OVERSTOCK Marks and to recognize the OVERSTOCK Marks as a source of Overstock's services.

17. Overstock derives substantial goodwill and value from its use of the OVERSTOCK Marks.

18. Overstock has received numerous accolades and awards over the years, including being named the 2012 Compuware Best of the Web Gold award winner in the Retail Product Order Transaction category and a Silver award winner in the Retail-Last Mile category; earning the No. 4 spot in the customer service rankings among all U.S. retailers by the National Retail Federation/American Express Customer Choice Awards for 2011; and being awarded a Gold Stevie Award for Company of the Year-Retail at the Tenth Annual American Business Awards in 2012.

19. In December 2010, Overstock was ranked No. 1 in employee satisfaction in a Glassdoor.com survey commissioned by Forbes.

20. A recent Nielsen State of the Media: Consumer Usage Report placed Overstock among the top five most visited mass merchandiser websites.

### ZBiddy's Penny Auction Site

21. Upon information and belief, ZBiddy is an online "penny auction" site that has been operating in the United States since 2010.

22. Upon information and belief, the "penny auction" model requires users to pay a non-refundable fee to place each small incremental bid.  Bids are often sold in large groups or packages before an auction begins.

23. Upon information and belief, the auction ends after a period of time, and the last person to have placed a bid wins the item and also pays the final bid price, which is typically lower than the retail price of the item.

24. Upon information and belief, the auctioning site makes money through the fees paid by bidders and the payment for the winning bid, which typically total significantly more than the value of the item sold.

25. In addition, upon information and belief, some penny auction sites employ practices where a human or software (bot) bidder covertly acting for the seller places bids that make legitimate bidders continue bidding where otherwise the auction would end, or win the item at the last moment, depriving legitimate buyers of the opportunity to win.

26. Penny auctions have come under the scrutiny of the Better Business Bureau, with some sites being investigated as online gambling, as using unfair practices, or failing to deliver purchased goods. Some sites have been shut down by state governments after investigations.

27. Upon information and belief, ZBiddy has an "F" rating with the Better Business Bureau and has been the subject of at least ninety-seven complaints filed with the Better Business Bureau in the past twelve months, including advertising/sales issues; billing/collection issues; delivery issues; guarantee/warranty issues; and problems with products/service.

### ZBiddy's Wrongful Acts

28. Notwithstanding Overstock's well-established rights in and the fame of the OVERSTOCK Marks, ZBiddy and/or its agents have been using the OVERSTOCK Marks, or marks confusingly similar thereto, in conjunction with the ZBiddy penny auction site and advertising and promotion thereof.

29. For example, in a mass e-mail sent by ZBiddy and/or its agents in April 2011 advertising inventory closeout items at up to 90 percent discount, the "From" line states that the

e-mail is from "Overstock Auction."  A true and correct copy of the e-mail is attached hereto as **Exhibit B.**

30. In March 2013, ZBiddy and/or its agents sent another mass e-mail using the term "Overstock" no less than six times.  The e-mail states that it is from "Overstock Inventory Closeout," and the subject line of the e-mail is "New Overstocked IPads Under $50!"  The first line of the e-mail advertises "Overstock Inventory Closeout 2013," while the second line states, "Overstock Clearance 2013: Now Get 90% Off of New Products!"  The e-mail also contains two links where recipients are urged to "Go Here and View the Current 2013 Overstock Inventory!!"  A true and correct copy of the e-mail is attached hereto as **Exhibit C**.

31. In the e-mails sent in April 2011 and in March 2013, ZBiddy and/or its agents intentionally and habitually capitalize "Overstock" to foster confusion with the Overstock.com brand.

32. In addition, it appears that ZBiddy and/or its agents have in the past and are currently intentionally diverting users from the legitimate Overstock.com site to the ZBiddy site, or engaging in unlawful tactics to create confusion online between Overstock and ZBiddy.

33. Upon information and belief, ZBiddy's search engine optimization strategies and the techniques it and/or its agents use to boost Internet traffic are aimed at diverting traffic from Overstock.com, which is one of the largest e-commerce sites in the United States.

34. Upon information and belief, unlike Overstock, ZBiddy does not deal in the retail sale of "overstocked" or excess inventory of goods, but rather, ZBiddy's site is based on visitors using chance in bidding on items, such as IPads, that are not "overstock" or "overstocked" items within the common usage of those terms.

35. On April 15 and November 7, 2011, Overstock sent letters to ZBiddy informing it of the OVERSTOCK Marks and explaining its belief that ZBiddy and/or its agent's actions would cause confusion in the marketplace, with consumers believing that the e-mails from ZBiddy and/or its agents came from or were affiliated with Overstock.

36. In the letters, Overstock demanded that ZBiddy and/or its agents cease using any of the OVERSTOCK Marks in any of ZBiddy's business operations, marketing, or promotional efforts. True and correct copies of the letters are attached hereto as **Exhibit D**.

37. On November 28, 2011, an attorney representing ZBiddy responded to the letters from Overstock but failed to address any of the concerns raised by Overstock in its letters. A true and correct copy of the ZBiddy letter is attached hereto as **Exhibit E**.

38. The complained of practices have reappeared and on March 8, 2013, Overstock e-mailed ZBiddy's attorney, again reiterated Overstock's concerns, and demanded that ZBiddy and/or its agents cease using the OVERSTOCK Marks. A true and correct copy of the e-mail to ZBiddy is attached hereto as **Exhibit F**.

39. Neither ZBiddy nor its attorney responded to the e-mail from Overstock.

### Confusion in the Marketplace

40. ZBiddy's unlawful use of the OVERSTOCK Marks is causing actual confusion in the marketplace among consumers.

41. Contrary to the stellar customer service experience provided by the Overstock.com site, consumers repeatedly report feeling deceived, scammed, or taken advantage of by the ZBiddy site.

42. For example, in February 2013, the following exchange appeared on the Michigan State University message board:

- "LoneWolfSparty" posted:

    "Sooo I have to pay in order to bid, in order to buy something? What am I missing? This seems like the scam of all scams."

- "izzone89" responded:

    "You talking about the right site? There are bidding sites like that, but overstock.com isn't one of them."

- "Scott91575" then chimed in:

    "pay to bid? Are you sure you are on overstock.com? Is there a feature I am missing? It sounds like you are talking about one of those sites that charges you money to bid on something, and yes, it's a scam. They advertise the super low auction sales, but they actually make way more than the retail price on the product. It's essentially a form of gambling in hope you get lucky and have the winning bid. Yet if you are not lucky you spend money on bids without getting anything."

- "LoneWolf Sparty" then responded:

    "Good call! Turns out it was zbiddy. But they sent me an email making it look like Overstock. When I clicked on the link my WOT warned me against actually going to the site. Title of the email was Overstock Clearance. The ZBiddy piece was further down in the email. Watch the scam. . . ."

A true and correct copy of these postings are attached hereto as **Exhibit G**.

43. As another example, in a complaint posted on www.http://www.scambook.com/report/view/40516/Z-Biddy-Complaint-40516-for-$99.00 on November 26, 2011, a user named "Jane27" states:

> I received an e-mail which said it was Overstock.com auction. When I signed up on site I gave credit card info as I thought that was in case I won a bid, WRONG they instantly charged me $99.00 with no explanation. I tried calling immediately and they kept me on hold for 6 minutes than hung up[.] Did this several [times] and same hang up[.] I also tried online chat and nobody ever came online to chat[.] I reported this to my bank who said they will take action. Also

      relation is a Federal Agent so am making him aware of this scam.  I also suggest that letters of complaint be filed with the Attorney General's office.

A true and correct copy of this posting in attached hereto as **Exhibit H**.

    44. A comment chain posted on Complaints Board, http://www.complaintsboard.com/complaints/zbiddy-c431331.html in March and April 2011 reads as follows:

- On March 15, 2011, user "shawn peretz" writes:

I was on Overstock.com and when it asked for credit info I did so thinking I was still on Overstock, but zbiddy had hacked into my transaction and next thing I know I've purchased 265 bids, a dollar value of $159.00! Major scam! Don't do it.

- On March 25, 2011, user "MarianT" writes:

I also was on overstock.com and looking to buy some of their merchandise (in the past I did purchase from them) and like Shawn Peretz said above, I also found in my email a notice that I purchased $265 credits on zbiddy for $159, although I never intended to do such [a thing].  I was curious and I searched their site and got the [feeling] . . . all the people that is really getting to win those bids are working for that site.  It is a BIG BIG SCAM and we all that got scammed should get together to open a class action against this site. I wonder what overstock.com has to do with ZBiddy because they had to give them the permission to use their site, so, they have to be aware of this scam—is overstock.com working with ZBiddy to scam us?

- On April 22, 2011, user "Wouldn't U like to Kno" writes:

Wow I cannot believe that overstock will let Zbiddy use the credit card info that should be private at all times . . . .

A true and correct copy of this comment chain is attached hereto as **Exhibit I**.

    45. Another example is a comment posted by "mikea" on December 9, 2011, on ComplaintNow, www.http://www.complaintnow.com/Zbiddy/complaint/complaints/thread/ print/152519/170829.  His comment states:

    ZBiddy is a scam.  First of all the email I received was a spam that looked like it

> was from Overstock.com. . . .  Then after I signed up and started to place my bids I noticed that instead of taking 1 bid at a time it was taking 2 or 3.  I called them and a customer service rep logged into my account and tried it.  He said "Hey I guess it does."  I was told a service tech would call me on Monday, well after 5 days I had to call them. After them offering me 60 free bids to make it up to me, I told them I wanted a full refund.  Their floor manager Andrew and I called my credit card company so I could get it instantly put back.  Well guess what?  It didn't happen.  I'm calling the Florida AG's office, the BBB, you name it.  They are scam artists.

A true and correct copy of this comment is attached hereto as **Exhibit J**.

46. Defendants' unauthorized use of the OVERSTOCK Marks is likely to cause confusion, and has actually caused confusion, deceive, and mislead the consuming public as to the source, origin, or sponsorship of the goods and services offered by ZBiddy.  Defendants' actions are likely to cause confusion (and have actually caused confusion), deceive, or mislead the consuming public into believing that the services offered by ZBiddy originate from Plaintiff or that there is some connection between Plaintiff and ZBiddy, thereby causing Plaintiff irreparable harm.

47. Plaintiff's and ZBiddy's services are closely related and move through comparable or identical channels of trade to similar or identical classes of consumers.  Indeed, Defendants, upon information and belief, are taking unfair advantage of the market and customers cultivated and properly serviced by Overstock.

48. ZBiddy and/or its agents intentionally and habitually capitalized "Overstock" in their promotional and marketing materials to foster confusion with the Overstock.com brand.

49. Defendants have willingly and knowingly violated and infringed the rights of Plaintiff in its OVERSTOCK Marks, with the intention of causing confusion, deceiving, or

misleading customers, and Defendants have wrongfully traded on the goodwill and reputation of Plaintiff.

50. Defendants' conduct and practices have caused, and will continue to cause, irreparable harm for which there is no adequate remedy at law, and for which Plaintiff is entitled to injunctive relief and damages.

51. Defendants' acts as alleged above are without license or consent of Plaintiff.

## COUNT I
## Trademark Infringement (15 U.S.C. § 1114)

52. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as if fully set forth herein.

53. Defendants' unauthorized use of the OVERSTOCK Marks, or marks confusingly similar thereto, is likely to cause confusion, deceive, and mislead consumers as to the origin, sponsorship, and/or nature of ZBiddy's services.

54. Defendants' unauthorized use of the OVERSTOCK Marks constitutes infringement of Overstock's rights in and to the OVERSTOCK Marks in violation of 15 U.S.C. section 1114.

55. As a result of Defendants' unlawful activities, ZBiddy has received or will receive substantial profits to which it is not entitled. Overstock has suffered and, unless Defendants are enjoined from further acts of infringement, Overstock will continue to suffer monetary damages, including lost profits and impairment of the value of Plaintiff's OVERSTOCK Marks.

56. Defendants have acted as described herein with full knowledge of Overstock's rights and with the intention to usurp such rights. The aforementioned acts of Defendants are therefore intentional and willful, and were calculated to cause confusion, to deceive, and to

mislead the consuming public. As a result, Defendants should be held liable to Overstock for treble damages and attorney's fees pursuant to 15 U.S.C. section 1117.

57. Overstock has suffered, is suffering, and will continue to suffer irreparable injury for which it has no adequate remedy at law.

58. Overstock is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendants' further infringement.

## COUNT II
### Federal Unfair Competition (15 U.S.C. § 1125(a))

59. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as if fully set forth herein.

60. By using the OVERSTOCK Marks to offer, advertise, and promote services in commerce and the other actions described herein, ZBiddy and/or its agents have used in connection with ZBiddy's services a false designation of origin, or a false or misleading description or representation of fact, which is likely to cause confusion, deceive, and mislead the consuming public into believing that the services offered by ZBiddy are sponsored by, approved by, originate with, or are affiliated with Overstock.

61. Defendants' actions, as set forth above, constitute unfair competition, false designation of origin, and false description in violation of 15 U.S.C. section 1125(a).

62. Defendants' acts have been willful and in conscious disregard of the trademark rights of Overstock.

63. Overstock has suffered, is suffering, and will continue to suffer irreparable injury for which it has no adequate remedy at law.

64. Overstock is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendants' further infringement.

65. Further, Overstock is entitled to damages and in amounts to be proven at trial.

## COUNT III
### Intentional Interference with Economic Relations

66. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as if fully set forth herein.

67. ZBiddy and/or its agents' interference with Overstock's actual or prospective relationships with consumers, by thwarting consumers' attempts to order from Overstock.com and by diverting Web traffic from the Overstock site to the ZBiddy site, constitutes tortious interference with Overstock's actual or prospective business relationships.

68. ZBiddy and/or its agents' actions were willful, intentional, and performed with malicious intent and bad faith, thereby entitling Overstock to punitive damages.

69. As a direct and proximate result of ZBiddy and/or its agents' tortious conduct, Overstock has suffered damages in the form in an amount to be determined at trial.

70. As a direct and proximate result of ZBiddy and/or its agents' tortious conduct, Overstock has suffered irreparable harm and is entitled to injunctive relief. In addition, Overstock is entitled to money damages, the amount of which will be established at trial.

## COUNT IV
### Common Law Trademark Infringement and Unfair Competition

71. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as if fully set forth herein.

72. As a result of the association by the public of Plaintiff's OVERSTOCK Marks with Plaintiff and its services, the use by Defendants of the OVERSTOCK Marks in connection with ZBiddy's operations, promotional efforts, and services is likely to cause confusion, deceive, and mislead.

73. Defendants have utilized the OVERSTOCK Mark with full prior knowledge of Plaintiff's rights in and to the OVERSTOCK Marks, and Defendants' use of the OVERSTOCK Marks was and is for the willful and calculated purpose of trading on Overstock's goodwill and business reputation as embodied in and symbolized by Plaintiff's OVERSTOCK Marks.

74. Defendants have marketed ZBiddy's services in such a manner so as to inevitably suggest an association, affiliation, sponsorship with, or approval by, Plaintiff.

75. Defendants' acts have caused, or are likely to cause, confusion, to deceive, and to mislead the consuming public as to the origin or sponsorship of the goods provided, all to the profit of Defendants and to Plaintiff's detriment.

76. Defendants' conduct constitutes infringement of Plaintiff's common-law rights in and to Plaintiff's OVERSTOCK Marks, and further constitutes common law unfair competition with Plaintiff.

77. As a direct and proximate result of ZBiddy and/or its agents' conduct, Overstock has suffered irreparable harm and is entitled to injunctive relief. In addition, Overstock is entitled to money damages, the amount of which will be established at trial.

## COUNT V
## Unfair Competition under Utah Code Ann. §§ 13-5A-102 and 103 and Common Law

78. Plaintiff incorporates herein by reference the allegations contained in the above paragraphs as if fully set forth herein.

79. Defendants have intentionally engaged in business acts or practices that are unlawful, unfair, and fraudulent; that have diminished and will continue to diminish the intellectual property of Overstock; and that constitute trademark infringement.

80. By engaging in the above-described activities, Defendants have engaged in unfair competition under the Utah Unfair Competition Act and under common law.

81. Overstock is entitled to an award of its actual damages, costs and attorney fees, and punitive damages under the Utah Unfair Competition Act.

82. Overstock has suffered, is suffering, and will continue to suffer irreparable injury for which it has no adequate remedy at law.

83. Overstock is entitled to a preliminary injunction to be made permanent upon entry of final judgment, preventing Defendants' further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Overstock prays for judgment as follows:

1. That Defendants and their officers, agents, servants, employees, attorneys, and all persons in active concert or participating with any of them be preliminarily and thereafter permanently enjoined from using, in connection with their business affairs, the OVERSTOCK Marks or anything which so resembles the OVERSTOCK Marks so as to be likely to cause confusion, deception, or mistake, including, but not limited to, using the term "Overstock" in conjunction with any of its operations, including on any of its mass e-mails, advertising, or promotional materials, as previously described herein;

2. That Defendants be ordered to deliver up for destruction any and all materials in its possession, control or custody, including but not limited to, signs, packaging, forms,

advertisements, business cards, letterheads, circulars, boxes, and/or other representations and means for producing the same, whether in hard copy or electronic media, that make reference to or use any designation or mark that is confusingly similar to the OVERSTOCK Marks;

    3.    That Defendants be required to account for and pay to Plaintiff three times all gains, profits, and advantages derived by Defendants from the trademark infringement and unfair competition described herein;

    4.    An award of damages pursuant to 15 U.S.C. § 1117(a), including Defendants' profits, damages sustained by Overstock, and costs of the action;

    5.    An award pursuant to 15 U.S.C. § 1117(b) of three times Defendants' profits as enhanced damages;

    6.    Punitive damages pursuant to the Utah Unfair Competition Act, Utah Code § 13-5a-103, and due to Defendants' intentional interference;

    7.    For a finding this is an exceptional case pursuant to the Lanham Act and an award of reasonable attorney fees;

    8.    Reasonable attorney fees, investigatory fees and expenses, together with prejudgment interest; and

    9.    Such other and further relief as this Court may deem just and equitable.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury of any issue so triable.

DATED this 26th day of March, 2013.

                                                PARSONS BEHLE & LATIMER

                                                By  /s/ Nicole G. Farrell
                                                   MICHAEL L. LARSEN
                                                   NICOLE G. FARRELL
                                                   JEFFREY M. SANCHEZ
                                                   *Attorneys for Plaintiff*

Plaintiff's Address:
6350 South 3000 East, Suite 100
Salt Lake City, Utah 84121